UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TIMOTHY D. JONES, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 09 C 03916 |
| | ) | |
| v. | ) | Judge Edmond E. Chang |
| | ) | |
| DR. ADRIAN FEINERMAN, DR. STEPHEN CULLINAN, DR. SETH OSAFO, DR. PARTHA GHOSH, WEXFORD HEALTH SOURCES, INC., HEALTH PROFESSIONALS, LTD.,[1] | ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Timothy Jones filed this suit under 42 U.S.C. § 1983 against Dr. Adrian Feinerman, Dr. Stephen Cullinan, Dr. Seth Osafo, Dr. Partha Ghosh, Wexford Health Sources, Inc., and Health Professionals, Ltd. (HPL), seeking compensatory and punitive damages for alleged violations of Jones's Eighth and Fourteenth Amendment rights.[2] Feinerman, Osafo, and Wexford [R. 36][3], as well as Cullinan and HPL [R. 46], have moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[4] For the reasons stated below, Feinerman, Osafo, and Wexford's motion is granted, and HPL and Cullinan's motion is granted in part and denied in part.

---

[1] The case is captioned in this Court's system with Dr. Feinerman's surname misspelled as "Finnerman." The Clerk is directed to correct the caption.
[2] This Court has subject matter jurisdiction under 28 U.S.C. § 1331.
[3] Citation to the docket is "R." followed by the docket entry.
[4] Ghosh answered the complaint and has not filed a motion to dismiss.

# I.

At this stage of the litigation, we accept Plaintiff's allegations as true and draw reasonable inferences in Plaintiff's favor. *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2079 (2011). From November 26, 2003 until October 9, 2009, Timothy Jones was incarcerated at various Illinois correctional facilities, including Pinckneyville Correctional Center and Illinois River Correctional Center. R. 26 ¶ 2. Wexford and HPL contracted with the Illinois Department of Corrections (IDOC) to provide health care services to inmates at Pinckneyville and Illinois River. *Id.* ¶¶ 7-8. Dr. Adrian Feinerman, a physician and Wexford employee, was the medical director at Pinckneyville during Jones's incarceration there. *Id.* ¶ 3. Beginning in February 2005, Jones complained to Feinerman on multiple occasions of pain on his left side, but Feinerman refused to examine him. *Id.* ¶¶ 15-16. In or about July 2005, Jones's spleen ruptured. *Id.* ¶ 17. Jones was then transported to a hospital, where he underwent an emergency splenectomy. *Id.* ¶¶ 18-19. Upon awaking from surgery, hospital staff diagnosed Jones for the first time with Stage 3 Non-Hodgkin's Mantle Cell Lymphoma. *Id.* ¶ 20. Based on conversations with hospital staff, Jones expected to receive chemotherapy upon his return to Pinckneyville. *Id.* ¶ 21. Jones repeatedly requested chemotherapy treatment from Feinerman, but Feinerman ignored these requests. *Id.* ¶¶ 22-23. Jones went two months without receiving any treatment for his lymphoma by the end of 2005. *Id.* ¶ 23.

In late 2005, Jones was transferred to Illinois River so that he could receive cancer treatment. *Id.* ¶ 24. Dr. Seth Osafo and Dr. Stephen Cullinan provided health

care services to inmates at Illinois River. *Id*. ¶¶ 4-5. Osafo was the medical director at Illinois River and Cullinan co-founded HPL. *Id*. Beginning in January 2006 and lasting over a period of six to seven weeks, Jones received his first lymphoma treatment, which Cullinan administered. *Id*. ¶ 26. Afterward, Cullinan did not provide additional care to Jones, administer any tests of his condition, and or tell him that the lymphoma was in remission. *Id*. ¶¶ 26-28. Jones received no medical treatment or testing at all until months later, in June or July of 2007, when he underwent a biopsy and a Computerized Tomography (CT) scan that revealed that his cancer had metastasized to his bone marrow. *Id*. ¶¶ 29-30.

Jones filed a complaint in June 2009. R. 1. The exact date of filing will be discussed in greater detail below. Jones alleges that Feinerman and Wexford displayed deliberate indifference to his medical needs by recklessly failing to diagnose his diseased lymphoma and spleen, which caused him personal injury. *Id*. ¶¶ 34, 36, 38. Jones also alleges that Feinerman, Wexford, Cullinan, Osafo, and HPL all displayed deliberate indifference to his medical needs by recklessly failing to effectively treat his diseased lymphoma and spleen, which caused him personal injury. *Id*. ¶¶ 41, 44, 46. Because Defendants acted under the color of state law, Jones alleges that they violated his Eighth Amendment right to be free from cruel and unusual punishment (as incorporated through the Fourteenth Amendment). *Id*. ¶¶ 37, 45.

## II.

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007). The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *McGowan v. Hulick*, 612 F.3d 636, 637 (7th Cir. 2010) (courts accept factual allegations as true and draw all reasonable inferences in plaintiff's favor). A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. –, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. And the allegations that are entitled to

the assumption of truth are those that are *factual*, rather than mere *legal* conclusions. *Iqbal*, 129 S. Ct. at 1950.

### III.

Jones's allegations all advance a theory of deliberate indifference to his serious medical needs. Section 1983 provides a cause of action against a person, who, acting under color of state law, deprives an individual of any "rights, privileges, or immunities secured by the Constitution and laws" of the United States. *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994) (quoting 42 U.S.C. § 1983). It provides the procedural vehicle for bringing suit as a "method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989). Thus, job one is to identify the specific constitutional right allegedly infringed. *Id.* at 394. Here, deliberate indifference to the serious medical needs of a prisoner violates the Eighth Amendment's prohibition against cruel and unusual punishment. *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008). Jones alleges that each Defendant knew of his serious medical conditions but recklessly disregarded them. R. 26 ¶¶ 34, 36, 41, 44.

As detailed below, however, Jones's claims with respect to the failure to diagnose and treat his diseased spleen are barred by the statute of limitations, as are his claims that Feinerman failed to effectively diagnose or treat his lymphoma. His allegations against Osafo fail because they are too speculative, and fail to plausibly state a claim. His allegations against Wexford and HPL fail because they do not plausibly allege a policy of unconstitutional acts. Only Jones's allegation against Cullinan survives the

motion to dismiss because the statute of limitations, arguably, began to run when he was notified that his cancer had metastasized, and thus this action was filed within the statute of limitations period.

### A. Diseased Spleen – All Defendants

The statute of limitations bars Jones's claims regarding his spleen, and all claims against Feinerman. The applicable statute of limitations for this § 1983 action is derived from state personal-injury law. *Wilson v. Garcia*, 471 U.S. 261, 275, 280 (1985). Jones's suit is based on personal injuries he suffered as an inmate at various prisons in Illinois. R. 26 ¶¶ 1-2. Therefore, he is subject to Illinois's two-year statute of limitations for personal injury actions. 735 Ill. Comp. Stat. Ann. 5/13-202 (2008); *see Anton v. Lehpamer*, 787 F.2d 1141, 1142 (7th Cir. 1986).

Although state law determines the length of the statute of limitations, federal law determines when that statute of limitations begins to accrue. *Wilson v. Giesen*, 956 F.2d 738, 740 (7th Cir. 1991). Federal law dictates that accrual begins when a "plaintiff knows or should know that his or her constitutional rights have been violated." *Id*. In this case, therefore, the statute of limitations began to run when Jones knew or should have known that his Eighth Amendment rights had been violated by Defendants' deliberate indifference to his serious medical needs.

Jones alleges that Defendants generally, without singling out those Defendants who were actually responsible for him at the time, failed to diagnose his ruptured spleen. R. 26 ¶ 34. But, even if true, the statute of limitations for that claim accrued

more than two years before the case was filed. In July 2005, Jones's spleen ruptured. *Id.* ¶ 17. Accordingly, Jones was on notice that his constitutional rights were violated due to a failure to diagnose his diseased spleen. And Jones's claims concerning his spleen are amenable to a bright-line deadline. The spleen ruptured in July 2005, and the damage was repaired. Thus, the statute of limitations for deliberate indifference to the condition of his spleen began to run in July 2005. Jones had until July 2007 to file his suit for that claim, but did not do so until June 2009. Because Jones failed to bring his suit within the statute of limitations period, his claims based on his spleen, including against Feinerman and Wexford for failing to diagnose his diseased spleen, are barred by the statute of limitations.

### B. Failure to Diagnose Lymphoma – All Defendants

Separate from the condition of his spleen, Jones also alleges that Defendants failed to diagnose (as distinct from the failure to *treat*) his lymphoma. *Id.* ¶ 34. Jones first became aware of the lymphoma in July 2005 when he awoke from the splenectomy and hospital staff told him that he had lymphoma and needed treatment for it. *Id.* ¶¶ 20-21. This put Jones on notice in July 2005 that he had a lymphoma and that Defendants had failed to diagnose it up until that time. Again, because Jones failed to bring his suit within two years of July 2005, his claims regarding diagnosis of the lymphoma are barred by the statute of limitations.

C.  **Failure to Treat Lymphoma – Feinerman**

Jones alleges that Feinerman failed to effectively treat his lymphoma. *Id.* ¶ 41. Jones became aware that he needed treatment for lymphoma at least as early as July 2005. *Id.* ¶ 20. After his diagnosis, Jones "expected" chemotherapy treatment, but his requests were "ignored" by Feinerman. *Id.* ¶¶ 21-23. In late 2005, Jones was transferred out of Feinerman's care, and on to a new facility. *Id.* ¶ 24. Jones argues that Feinerman's deliberate indifference was part of a "continuing violation" that was not discovered until June 2007. R. 41 at 5 (citing *Heard v. Sheahan*, 253 F.3d 316, 317-18 (7th Cir. 2001)).

But Jones's arguments are not persuasive. With regard to when the constitutional violation was discovered, Jones alleges that after his splenectomy, he "expected" chemotherapy, and that he was "ignored." Thus, based on Jones's own allegations, he knew or should have known then and there that Feinerman was ignoring his serious medical need to receive cancer treatment.

Relying on *Heard*, Jones argues that this is not fatal to his claims, because Feinerman's conduct was part of a continuing violation, and that the Court can reach outside of the statute of limitations period to Feinerman's conduct. *Heard* held that a statute of limitations for a claim based on deliberate indifference – in contrast to medical malpractice – does not begin to run as soon as a plaintiff discovers he has a medical problem that requires attention. *Heard*, 253 F.3d at 318. Instead, the continuing violation doctrine recognizes the reality that every day a state actor fails

to treat a prisoner's painful condition is a fresh infliction of punishment, and that it would be unreasonable to require a plaintiff to sue separately over every incident of unlawful conduct in the continual series. *Id.* at 318, 319. Given the impracticality of filing a series of suits, a plaintiff is permitted to reach back to the beginning of the series of violations, even if the start would otherwise fall outside of the statute of limitations, and pursue the series in one claim, so long as part of the series is within the statute of limitations. *Id.* at 319.

But the series of violations continue only "for as long as the defendants [have] the power to do something about [the prisoner's] condition." *Id.* at 318. Measured by this standard, Jones's claims against Feinerman must be dismissed. The series of violations Jones alleges against Feinerman terminated when Feinerman no longer had the power to do something about Jones's condition, that is, when Feinerman was no longer responsible for Jones's care. That occurred in late 2005, when Jones was transferred to another IDOC facility and out of Feinerman's care. The continuing violation doctrine would have allowed Jones to file a claim in late 2007, but no later, because the series of violations ended when Feinerman no longer had the power to do anything about Jones's lymphoma. Because Jones did not bring this suit within two years of the completion of Feinerman's series of violations, the failure to treat claims against Feinerman must also be dismissed.

**D.     All Claims Against Osafo**

In one set of paragraphs of the complaint, Jones alleges that Osafo failed to effectively treat his lymphoma; more precisely, without naming Osafo separately or alleging facts specific to him, the paragraphs allege that "Defendants" were deliberately indifferent to the need for lymphoma treatment. R. 26 ¶¶ 41-47. The complaint mentions no facts about Osafo except that he was the medical director of Illinois River. *Id.* ¶ 5. Nothing is alleged about any interactions between Jones and Osafo while Jones was an inmate at Illinois River. As discussed above, a claim of deliberate indifference to serious medical needs requires that a plaintiff prove that the defendant subjectively knew of and disregarded a risk to the plaintiff's health or safety. Proof is not required at this stage, *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009), but allegations beyond "formulaic recitation of the elements" of the claim are, *Iqbal*, 129 S. Ct. at 1951. In *Iqbal*, the Supreme Court categorized as "conclusory" "bare assertions" – and thus not entitled to the assumption of truth – allegations that the defendants "knew of, condoned, and willfully and maliciously agreed to subject" the plaintiff to unconstitutional treatment. *Id.* Similarly, Jones's complaint offers against Osafo only the conclusory allegation of deliberate indifference against all "Defendants," R. 26 ¶ 41, without any more allegations from which to draw an inference that Osafo knew of Jones's lymphoma and refused to treat it effectively.[5] Perhaps discovery into the remaining claim (see *infra*) against Cullinan for the medical care (or lack thereof)

---

[5]The complaint is distinguishable from *Burks*, where at least a grievance handler directed the medical unit – of which the relevant defendant in *Burks* was the director – to send the plaintiff to a specialist, thus making it likely that the medical unit director knew of the medical need. 555 F.3d at 594. It is also worth noting that *Burks* was decided three months before *Iqbal*.

at Illinois River, or perhaps even discovery into the claim against Ghosh, will reveal a basis for additional allegations against Osafo, but the current complaint fails to state a claim against Osafo.

This is true even if Jones is trying to invoke some sort of supervisory liability theory against Osafo, who was the medical director at Illinois River. There is no vicarious liability under § 1983. *Iqbal*, 129 S. Ct. at 1948. And the Supreme Court has even labeled "supervisory liability" as a "misnomer" in the § 1983 and *Bivens* context. 129 S. Ct. at 1949. It is not clear what impact, if any, *Iqbal* has on the line of cases that hold supervisors may be held liable if they "facilitated, approved, condoned, or turned a blind eye" to constitutional violations. *E.g.*, *Trentadue v. Redmon*, 619 F.3d 648, 652 (7th Cir. 2010). Perhaps this is all just a way of saying what the Seventh Circuit has previously held, that "a supervising prison official cannot incur § 1983 liability unless that officer is shown to be personally responsible for a deprivation of a constitutional right." *Vance v. Peters*, 97 F.3d 987, 992 (7th Cir. 1996); *see also Vinning-El v. Evans*, – F.3d –, 2011 WL 4336661, at *1 (7th Cir., Sep. 16, 2011) ("Section 1983 does not authorize 'supervisory liability.'") (citation omitted). Or perhaps *Iqbal* has set a more demanding standard than previously set for supervisors to be held responsible for conduct in which they did not personally engage. In this case, however, there is no need to reconcile the standards: here, Jones has not alleged any personal conduct or responsibility of Osafo at all, other than the conclusory allegations that address "Defendants" as a group. R. 26 ¶¶ 41-47. For Osafo to be personally liable, the complaint must allege some causal connection between Osafo personally and the

violation of Jones's constitutional rights. *Vance*, 97 F.3d at 993. Jones's claims against Osafo are dismissed.

E.  **All Claims Against Wexford and HPL**

Jones's allegations against Wexford and HPL must also be dismissed. Jones alleges that Wexford and HPL failed to effectively treat his lymphoma. *Id.* ¶ 41. As corporations, Wexford and HPL can be held liable for deliberate indifference only if they had a policy or practice that caused the violation. *Woodward v. Correctional Med. Services of Ill., Inc.*, 368F.3d 917, 927 (7th Cir. 2004). Wexford and HPL "must have been aware of the risk of harm and, by failing to act to rectify it, sanctioned the harmful conduct." *Novack v. County of Wood*, 226 F.3d 525, 530 (7th Cir. 2000). The complaint, however, does not allege that either Wexford or HPL were engaged in any policy or practice to violate inmates' constitutional rights.

There may still be liability if there is a "series of bad acts" that allow "the court to infer from them that the policymaking level of government was bound to have noticed what was going on and by failing to do anything must have encouraged or at least condoned, thus in either event adopting, the misconduct of subordinate officers." *Jackson v. Marion County*, 66 F.3d 151, 152 (7th Cir. 1995). Here, Jones argues that there is such a series of bad acts. R. 41 at 8. Jones argues that the deliberate indifference he experienced over the course of more than one facility for a wide span of time compels the conclusion that Wexford and HPL are liable. *Id.* But so far as the complaint alleges, to the extent that either Wexford or HPL acted unconstitutionally,

Jones's allegations are limited only to *his* treatment, or lack thereof. Ordinarily, absent a policy expressly adopted by a final policy-maker, a plaintiff must show that there is a "pattern" of failing to treat "inmates." *Novack*, 226 F.3d at 531 (holding that the plaintiff's failure to prove a pattern of suicide across inmates at a facility required judgment in favor of the defendant-corporation). In this case, Jones's allegations are insufficient, because they are limited only to him, and do not represent a pattern of deliberate indifference to multiple inmates across the facilities where he was incarcerated. There might be other cases where a policy may be sufficiently alleged as a pattern (again, as distinct from municipal liability via a final policymaker's conduct) even though it is applicable to only one or a handful of inmates, but the allegations here simply do not state that type of pattern. Therefore, Jones has failed to state a cause of action against either Wexford or HPL.

   F.   **Failure to Treat Lymphoma – Cullinan**

Jones's final allegation that is the subject of the present motion to dismiss alleges that Cullinan failed to effectively treat his lymphoma. R. 26 ¶ 41. Cullinan began treating Jones's lymphoma in early 2006. *Id.* ¶¶ 25-26. After the initial therapy ended, Cullinan failed to follow up with more testing, treatment, or even an update as to whether or not the cancer was in remission. *Id.* ¶¶ 27-29. In light of these allegations – that Cullinan kept Jones in the dark – the statute of limitations with respect to Jones's claim against Cullinan did *not* accrue in early 2006; instead, accrual began in June or July 2007 when Jones was made aware that his cancer had metastasized. *Id.* ¶¶ 29-30. Only at that point could Jones have known that Cullinan

violated his constitutional right to medical care by failing to effectively treat his lymphoma earlier. Perhaps discovery will show otherwise; if so, the limitations defense may be raised again at the summary-judgment stage.

The precise date in June or July 2007 that Jones learned that his cancer metastisized is crucial because the effective date on which Jones's complaint was filed falls in the same period of time, plus two years. The complaint was filed on the Court's docket on June 29, 2009, it was mailed in an envelope postmarked June 25, 2009, and the complaint itself is dated June 18, 2009. R. 1. As discussed below, Jones's case will be deemed filed when he properly tendered it to the prison mail system for mailing.

The "mailbox rule" states that a *pro se* prisoner's notice of appeal is deemed filed when it is placed in the prison mail system. *Houston v. Lack*, 487 U.S. 266, 270 (1988). The mailbox rule is arguably applicable to this case. Although the Seventh Circuit has "assume[d]" that the rule applies to other filings by a *pro se* prisoner, *Simmons v. Ghent*, 970 F.2d 392, 393 (7th Cir. 1992) (a rule 59(e) motion), *Jones v. Bertrand* later stated that the Seventh Circuit had "not ruled on whether [*Houston*] should be extended to a *pro se* prisoner's filing of other papers." 171 F.3d 499, 501 (applying the mailbox rule to habeas corpus petitions). Although the Seventh Circuit has not explicitly applied the mailbox rule to § 1983 complaints of *pro se* prisoners, *Edwards v. United States* held that "we need not decide here whether there is any kind of paper, or any circumstance, under which a district court would be entitled to hold a *pro se* prisoner litigant to an actual receipt standard, *but we are confident that this would be an exceptional situation*." 266 F.3d 756, 758 (7th Cir. 2001) (emphasis added).

*Edwards* suggests that the Court should apply the mailbox rule to Jones's § 1983 complaint, just as other courts have to other § 1983 cases.[6] And there is also a clear answer based on the Local Rules: Local Rule of Civil Procedure 3.3 resolves the question for this particular case, which included an application to proceed *in forma pauperis*. Local Rule 3.3(d) provides in pertinent part:

> (d) Date of filing. If the judge grants the [*in forma pauperis*] petition, the complaint shall be filed as of the date of the judge's order except that where the complaint must be filed within a time limit and the order granting leave to file is entered after the expiration of that time limit, the complaint shall be deemed to have been filed:
>
>> (1) in the case of any plaintiff in custody, as of the time of the plaintiff's delivery of the complaint to the custodial authorities for transmittal to the court . . . .

Jones filed an application to proceed *in forma pauperis*, R. 4, and it was granted, R. 6. Accordingly, the date the complaint was filed is when it was delivered to authorities for transmittal to the court. To be sure, although Jones dated his complaint June 18, 2009, that does not necessarily mean that Jones tendered the complaint to the appropriate officials that same day. The precise date of filing can only be determined with additional discovery. At this stage of the litigation, it is Cullinan's burden to establish that Jones has failed to state a claim. Because Cullinan has not proved that Jones learned of the metastasis before June 18, 2007, and because Jones has made the

---

[6]Other circuits have applied the mailbox rule to § 1983 complaints. *See, e.g., Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995); *Lewis v. Richmond City Police Dep't*, 947 F.2d 733, 735-6 (4th Cir. 1991) (per curiam). A colleague in this district too has extended *Houston* to § 1983 complaints. *See e.g., Tolliver v. Jenkins*, 1993 WL 317259, *2 (N.D.Ill., Aug. 18, 1993). See also the unpublished (but post-January 1, 2007, so citable under Circuit Rule 32.1) decision, *Jervis v. Mitcheff*, 258 Fed. Appx. 3, 4 (7th Cir. Dec. 13, 2007) (applying mailbox rule to § 1983 complaint alleging deliberate indifference to medical need).

necessary allegations for a claim of deliberate indifference, the motion to dismiss is denied as to Cullinan.

IV.

Osafo, Feinerman, and Wexford's motion to dismiss [R. 36] is granted. Cullinan and HPL's motion to dismiss [R. 46] is granted in part and denied in part. All claims against HPL are dismissed. Jones's claim for failure to treat his lymphoma against Cullinan survives the motion to dismiss. As to all other claims against Cullinan, the motion to dismiss is granted. The only claims remaining in the case are those claims against Ghosh, and the claim for Cullinan's failure to treat Jones's lymphoma. The status hearing of 10/12/2011 remains as scheduled.

ENTERED:

*Edmond E. Chang*

Honorable Edmond E. Chang

United States District Judge

DATE: September 28, 2011